CHARLES WALLACH, PLAINTIFF-APPELLANT, v. LLOYD E. WILLIAMS, DEFENDANT, AND ANTHONY GENANTONE, TIDEWATER OIL CO., INC. AND TIDEWATER REALTY CO., INC., DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Decided June 28, 1967.

Before Judges LEWIS, LABRECQUE and KILKENNY.

*Mr. John Tomasin* argued the cause for appellant.

*Mr. Sidney Dincin* argued the cause for respondents Tidewater Oil Co., Inc. and Tidewater Realty Co., Inc. (*Mr. James I. Toscano,* attorney).

*Mr. Cornelius W. Caruso* appeared on behalf of respondent Anthony Genantone (*Caruso & Caruso,* attorneys; *Mr. C. William Caruso,* on the brief).

The opinion of the court was delivered by
LABRECQUE, J. A. D. Plaintiff sued for personal injuries sustained while a business invitee at a Flying "A" service station located on lands of defendant Tidewater Realty Co., Inc., (Realty) which was leased to defendant Tidewater Oil

Co., Inc., (Tidewater), and sublet to defendant Anthony Genantone. On June 15, 1962 while plaintiff's vehicle was being fueled at one of Genantone's gasoline pumps, plaintiff walked to the rear of his car to place something in the trunk. As he was standing there defendant Lloyd E. Williams pulled up and stopped his car at a point about ten feet away. Williams got out of the car leaving two passengers, neither of whom was familiar with the operation of his car, in the front seat. Williams did not shut his motor off although he testified he left the automatic drive lever in "neutral" and applied the holding brake. Suddenly, while Wallach was still standing at the rear of his car, the Williams car moved forward, pinning him against the rear of his own car and crushing his leg so badly that amputation became necessary.

At the trial of the case, at the conclusion of all the proofs, the trial judge granted the motions of defendants Tidewater and Realty for judgment in their favor. *R. R.* 4:51–1. A similar motion for judgment by Genantone was reserved by the trial judge. *R. R.* 4:51–2(*a*). Following the rendition of a verdict in the sum of $175,000 against both Williams and Genantone, Genantone's motion was granted.

Plaintiff's original appeal was from the judgments in favor of Genantone, Realty and Tidewater. Williams did not appeal. At the oral argument we were advised that there had been a settlement as to Genantone so that the remaining issues with which we are concerned pertain only to the liability of Tidewater and Realty.

We hold that the entry of judgment in favor of Realty was proper. Realty had no connection with and was exercising no control over the operation of the service station. Its sole interest was as the owner and lessor thereof to Tidewater for a 20-year period beginning December 1, 1959. Conceding, *arguendo,* that it was a wholly owned subsidiary of Tidewater, the use of such corporate entities for the purpose of holding title to property is not *per se* fraudulent. *Macfadden v. Macfadden,* 46 *N. J. Super.* 242, 249

*(Ch. Div.* 1957), affirmed 49 *N. J. Super.* 356 *(App. Div.* 1958), certif. denied 27 *N. J.* 155 (1958). The record before us reveals no proof which would support an inference that title was held in Realty for any illegal or fraudulent purpose.

Plaintiff urges that the nature of the relation between Tidewater and Genantone, the operator of the service station, was such that it continued responsible with him for the operation of the station and thus became jointly liable for any injury resulting from negligence in the operation thereof or from nuisances permitted to exist on the premises.

We disagree and hold that, in the context of the facts presented, the judgment in favor of defendant Tidewater was proper. In *Brittain v. Atlantic Refining Co.,* 126 *N. J. L.* 528 *(E. & A.* 1941), defendant Atlantic Refining Co. leased certain premises owned by it to one Ramer for use as an automobile service station. Under the lease Ramer agreed to repair damaged equipment and assumed responsibility for "full and exclusive control of premises and equipment thereon." By a separate agreement he agreed to act as a dealer for the landlord and to purchase from it stipulated amounts of gasoline and lubricants. Brittain later sued the landlord for personal injuries sustained by him when his automobile rolled off the station "lift" while being serviced, pinning him against the wall. His theory as to the company's liability was that it had failed to perform its duty of exercising reasonable care to make the premises and appliances (the lift) reasonably safe or, alternatively, that it had delivered the premises and appliances to the tenant in such a defective and dangerous condition as to bring about a nuisance for which it continued liable.

In rejecting this contention the court held that the lessor was under no liability for the injuries sustained by plaintiff, notwithstanding that the tenant had been required to sell a minimum amount of the lessor's products and that the lessor routinely had sent its agents to inspect the premises. It noted that such arrangements "seem to be quite a logical means

whereby the company could increase its sales, and there nowhere appears any interference with the tenant's exclusive responsibility for operation of the premises themselves, as provided in the lease." As to the existence of the alleged nuisance the court held that the lessor was not a guarantor of the tenant's non-negligent use of the premises and that the only basis of liability would have been one which arose from a faulty construction which resulted in a situation inherently dangerous to others, and that this had not been established by the facts.

We hold the rationale of *Brittain* to be equally applicable to the facts *sub judice*. Tidewater's lease to Genantone provided that:

"5. Lessee may conduct Lessee's business on said premises as Lessee sees fit, and none of the provisions of this lease shall be construed as reserving to Lessor any right to exercise any control or management over the business or operations of Lessee. * * *"

For violation of any of the terms and conditions of the lease, or upon the happening of certain other contingencies set forth therein, Tidewater was given the option to terminate the lease. The lease obligated Genantone to indemnify and save the lessor harmless from liability for personal injuries, comply with all applicable laws and regulations, make necessary repairs and replacements and permit Tidewater to make inspections of the leased premises. By a separate contract Genantone became obligated to purchase and dispense Tidewater's products to his customers.

Considered in the light most favorable to plaintiff the arrangement between Tidewater and Genantone imposed no duty on the part of Tidewater to Genantone's business invitees to guard against the condition which caused plaintiff's injury. *Brittain v. Atlantic Refining Co., supra; Marx v. Standard Oil Co. of New Jersey*, 6 *N. J. Super.* 39 (*App. Div.* 1949); Annotation, "Liability of owner or operator of garage or gasoline filling station for bodily injury to nonemployees on premises," 8 *A. L. R. 3d* 6, 80 (1966).

Here, as in *Brittain*, the inspection of the premises and the distribution of printed matter to Genantone and other dealers were the means "whereby the company could increase its sales," and were not in derogation of Genantone's exclusive responsibility for operation of the premises. The printed suggestions for service station operation contained in the company's magazine or in other brochures, which counselled such things as the rendition of good service to customers, the wearing of "a clean white uniform" by service station attendants and the exercise of courtesy and politeness by them at all times, all came within this category. So did also the printed brochures giving suggested instructions as to the proper method of rendering certain services such as lubrication, changing tires and towing automobiles.

Plaintiff urges that the jury could have found from the proofs that Genantone had habitually failed to require that motors be shut off before customers were served with fuel and that this amounted to the maintenance of a nuisance on the premises for which Tidewater, as lessor, was equally responsible. Assuming, but not deciding, that the proofs would support such a finding, no liability would attach to Tidewater by reason thereof. *Brittain, supra,* at *p.* 534. Plaintiff's injuries did not result from a *condition* which existed at the service station. Tidewater was not a guarantor of the non-negligent use of the leased premises by Genantone. *Fletcher v. Greater Newark Bldg. & Loan Ass'n.,* 123 *N. J. L.* 59 (*Sup. Ct.* 1939). Assuming that a condition on the premises had brought about plaintiff's injury, it was not a condition which was inherently or continuously capable of such harm as was "not to be avoided by the tenant's exercise of reasonable care." *Wasilewski v. McGuire Art Shop,* 117 *N. J. L.* 264 (*Sup. Ct.* 1936).

In view of the foregoing we find it unnecessary to pass upon the remaining reasons urged for reversal.

Affirmed.